**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Beverly A. Alferink,** | ) | **CASE NO. Case No. 1:11 CV 2359** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Manor Care of Parma, Oh, LLC, et al.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendants.** | ) | |

**Introduction**

This matter is before the Court upon defendants' Motion for Summary Judgment (Doc. 11). This is an employment discrimination case alleging termination based on age and gender. For the following reasons, the motion is GRANTED.

**Facts**

Plaintiff Beverly Alferink filed this Complaint against defendants Manor Care of Parma, Ohio, LLC; Heartland Employment Services, LLC; and HCR ManorCare, LLC[1] (collectively hereafter, defendants). Plaintiff alleges that she was terminated from her

---

[1] The precise naming of defendants has been pointed out in defendants' motion.

1

employment with defendants because of her age and gender.

The following background facts are taken primarily from defendants' motion as plaintiff did not provide a statement of facts separate from her discussion of her claims.[2] Manor Care of Parma is a skilled nursing and rehabilitation facility with approximately 100 beds located in Parma, Ohio. The facility is organized into numerous departments, including among others, Nursing, Dietary, Activities, Social Services, Housekeeping, Laundry, and Maintenance. (Carolyn Hecmanczuk decl.)

Plaintiff began working for Manor Care of Parma as the Housekeeping/Laundry Supervisor in March 2007 at the age of 59. (pltf. depo) In this position, plaintiff performed general laundry duties and supervised and coordinated the activities of laundry personnel. She also performed housekeeping and cleaning duties, and supervised and coordinated the facility's housekeeping program to maintain the facility in a sanitary, attractive, and orderly condition. (*Id.*; Hecmanczuk decl., Ex.)

At the time plaintiff was hired, Manor Care also employed a Maintenance Director, Hans Larsen, whose job it was to oversee the Maintenance Department. (pltf. depo.) This position was responsible for supervising, coordinating, and performing the activities of the maintenance department to ensure the facility, including all mechanical and electrical equipment, was maintained in good repair and all systems were in compliance with applicable safety and fire regulations and federal, state, and local building codes. The Maintenance Director was required to perform preventative maintenance and repairs on a wide variety of components in the facility. (Hecmanczuk decl., Ex.)

---

[2] The facts discussed by plaintiff will be addressed in the analysis below.

In November 2008, Hans Larsen resigned and the facility began searching for someone to fill the position. The facility's Administrator, Terri Plush (female, age 59), asked plaintiff to act as Maintenance Director until the position could be filled. While plaintiff had no prior maintenance training, she performed maintenance-related tasks during this time including changing light bulbs, fixing wheels and seats on wheelchairs, fixing wires on a dryer, fixing plungers and handles on toilets, changing call lights, and shoveling sidewalks. (pltf. depo.)

During this two and one-half month period before the new Maintenance Director was hired, plaintiff acknowledged that some maintenance-related tasks were not performed because she was unable to complete them. For instance, when a hot water tank leaked, plaintiff "shut the water off [and] informed Terri Plush" who called "the guy next door to look at it." On another occasion, a pipe burst and plaintiff did not know how to shut the water off. Someone had to be called who knew how to do it. (pltf. depo.)

In January 2009, defendants hired William Touville as Maintenance Director at the facility. (Hecmanczuk decl.) Immediately prior to his hire, Touville had worked since 2006 as a maintenance director at Elmcroft Assisted Living Facility, a much larger facility than Manor Care of Parma, supervising the maintenance departments as well as the laundry and housekeeping departments. Before that, Touville held a maintenance position for four years at a skilled nursing, rehabilitation, and assisted living facility, where he performed maintenance and minor housekeeping duties.[3] (Touville decl.)

---

[3] Touville had two years of vocational training at Cuyahoga Valley Career Center, but despite defendants' statement that this was "maintenance-related," it appears to have been in autobody repair. (Touville decl. Ex. 1)

3

In February 2009, plaintiff was taken to the emergency room with a rapid heartbeat. The doctor informed plaintiff that her condition was caused by work-related stress, and that she should take a couple days off and "take it easy." Plaintiff informed Plush and also told her that she was having a hard time with everything in the building. (pltf. depo.)

In February through April 2009, there were complaints about the cleanliness of the floors in the facility. Plaintiff feared that she would lose her job and her credibility as supervisor. In February 2009, complaints were also received about plaintiff's housekeeping staff. (pltf. depo.)  Also around this time, the facility's Administrator received complaints from plaintiff's staff that she was treating them unfairly.  In August 2009, Plush and the facility's Human Resources Director met with plaintiff about these complaints.  (pltf. depo.)

Throughout 2009, Manor Care of Parma was dealing with the effects of a faltering economy and a reduction in Medicare and Medicaid reimbursement.  As a result, management was forced to consider ways to reduce labor costs.  In August 2009, defendants consolidated the Housekeeping/Laundry and Maintenance Director positions at the facility.  The consolidated position was referred to as Environmental Services Supervisor (ESS).  The ESS was given supervisory responsibility over all the housekeeping, laundry, and maintenance departments, and was required to perform all facets of the Maintenance Director position which included the maintenance and repair of the facility's mechanical and electrical components.  The consolidation of these positions was not a new concept at Manor Care of Parma, but had been done at numerous Manor Care facilities throughout the United States, including the nearby Akron facility.  (Hecmanczuk decl.)  The ESS position was filled by Touville. (pltf. decl.)  Plaintiff was informed on August 31, 2009, that because her position

4

had been eliminated she had been terminated. Terri Plush, Administrator, signed the letter informing plaintiff of her layoff. (pltf. depo. Ex.)

This matter is before the Court upon defendants' Motion for Summary Judgment.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of [his] pleadings, but [his response], by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is genuine issue for trial. If he does not respond, summary judgment, if appropriate, shall be entered against him.

The court must afford all reasonable inferences and construe the evidence in the light most

5

favorable to the nonmoving party. *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985). However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

### **Discussion**

Plaintiff claims her termination was a result of age and sex discrimination.

"To establish a Title VII or an ADEA employment discrimination claim, a plaintiff is required to either present direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment." *Gulley v. County of Oakland*, 2012 WL 3668001 (6th Cir. Aug. 27, 2012) (citing *Carter v. Univ. of Toledo*, 349 F.3d 269, 272–73 (6th Cir.2003) (other citations and internal quotations omitted). In the absence of direct evidence of discrimination, the burden shifting analysis set forth in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and refined by *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981), applies. *Id.* (citations omitted). This requires plaintiff to present a prima facie case of discrimination. Once the prima facie case is made, the burden shifts to defendant to offer any legitimate, nondiscriminatory reason for the employment action. Plaintiff may then rebut by evidence of pretext. The burden of proof always remains with the plaintiff. *Id.*

To establish the prima facie burden in the case of gender and age discrimination, plaintiff must show that she (1) is a member of the protected class, (2) was subjected to an adverse employment decision, (3) was qualified for the position, and (4) was replaced by a person outside of the protected class. *Lockett v. Marsh USA, Inc.,* 354 Fed.Appx. 984 (6th Cir. 2009) (citing *Geiger v. Tower Auto*., 579 F.3d 614 (6th Cir. 2009).

In a reduction in force (RIF) case, the fourth element of the prima facie case is modified to require the plaintiff to submit "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Id.*; *Gulley, supra* (citing *Rowan v. Lockheed Martin Energy Sys., Inc*., 360 F.3d 544, 547 (6th Cir.2004). Although plaintiff's position was the only one reduced and consolidated, it is still considered a work force reduction. "Eliminating a single job is sufficient to constitute a legitimate reduction in force. *Lockett, supra* (citing *Barnes v. GenCorp, Inc*., 896 F.2d 1457, 1465 (6th Cir.1990) ("A [RIF] situation occurs when business considerations cause an employer to eliminate one or more positions within the company.") "Modification of the fourth element in a RIF situation is required because when an employer is forced to reduce its staff for economic reasons, the most common legitimate reason for the

7

discharge is the RIF itself." *Gulley* (citing *Brocklehurst v. PPG Indus., Inc.*, 123 F.3d 890, 896 (6th Cir.1997) (citing *Barnes*, 896 F.2d at 1465)).

Defendants do not dispute the first and third elements of the prima facie case, but contest that plaintiff was qualified for the ESS position or that she is able to offer additional evidence tending to indicate that Manor Care singled her out because of her age and gender.

**(1) whether plaintiff was qualified for the position**

Defendants assert that plaintiff was not qualified for the ESS position. Defendants point out that the person filling the ESS position was required to perform all facets of the Maintenance Director position, including the maintenance and repair of the facility's mechanical and electrical components. (Hecmanczuk decl.) The job description for the Maintenance Director position makes this individual responsible for ensuring the facility was in good repair and that all systems were in compliance with applicable safety and fire regulations and federal, state, and local building codes. The job description identifies specific responsibilities related to routine maintenance and repair. (*Id.* Ex. 3) Defendants identify the following portions of plaintiff's deposition testimony showing that she was not qualified to perform the duties required by the job description. The position required prior knowledge of maintenance procedures**.** But, plaintiff acknowledged that she had no maintenance-related training or prior maintenance-related work experience**.** Plaintiff also testified that she had never performed maintenance and repairs relating to commercial circuit breakers, PTAC units (including condenser coils), HVAC heat pumps, roof components, power generators, exhaust systems, central air conditioning units and condensers, garbage disposals, condenser coils on the refrigeration units, hot water tanks, emergency lighting, fire sprinkler systems, nurse call

8

systems, or dishwashing heating elements.

Plaintiff asserts that she was qualified for the position based upon the following evidence. Plaintiff points out that she had served in a satisfactory manner in the three areas included in the new position (housekeeping, laundry, and maintenance). She had been the supervisor over the housekeeping and laundry departments from her hire in March 2007, and had performed maintenance-related responsibilities including serving in a Maintenance Director capacity after Hans Larsen left in mid- November 2008. In fact, plaintiff testified, Larson showed her maintenance duties he performed. According to plaintiff's deposition testimony, she was asked by Terri Plush to be acting Maintenance Director from that time until someone was hired for the position, and that Touville was hired in January 2009. Even after Touville was hired, and another employee was hired to assist him, plaintiff continued to perform maintenance-related duties until she was laid off. Plaintiff's performance appraisal for this period shows that she performed in a satisfactory manner. In January 2009, plaintiff was nominated for a recognition award based on her dedication in serving as two department heads over the prior three months. Plaintiff testified that because Touville "wasn't there a lot," many of the maintenance duties that she acknowledged she was unable to perform, were not performed by Touville. Plaintiff also points out that her May 2009 Performance Appraisal, covering the prior year, identifies her position as Environmental Services Supervisor.

The Court agrees with defendants that plaintiff fails to demonstrate that she was qualified for the ESS position. This position required that the employee "perform all facets of the Maintenance Director position, including the maintenance and repair of the facility's

9

mechanical and electrical components." (Hecmanczuk decl.)  But, plaintiff does not dispute that she had no maintenance-related training or prior maintenance-related work experience.  When asked about specific performance on various mechanical and electrical components of the facility, plaintiff admitted that she had not performed the maintenance or repairs on these components. While plaintiff claims that Larsen showed her certain maintenance duties and that she performed various maintenance-related responsibilities including during the two and one-half months between Larsen's resignation and Touville's hire, the evidence shows that these were minor maintenance tasks and that plaintiff was unable to perform major repairs.  Plaintiff's deposition testimony that Touville "wasn't there a lot" which meant that his duties were not performed, is only conjecture.  Also, while plaintiff may have previously performed her own duties in a satisfactory manner, the evidence is undisputed that beginning in February 2009, there were housekeeping-related complaints. Touville, by contrast, was qualified for the position as evidenced by his declaration and employment application showing his previous experience as a maintenance director as well as his previous supervision over laundry and housekeeping departments.

**(2) whether plaintiff has additional direct, circumstantial, or statistical evidence**

As discussed above, in a reduction in force case, the fourth element of the prima facie case is modified to require the plaintiff to submit additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.  This has been referred to as a "heightened standard."  *Geiger,* 579 F.3d at 623 (citations omitted).  Defendants assert that plaintiff has no evidence in this regard.  Plaintiff does not dispute that this is a work force reduction case.  Even assuming plaintiff has

demonstrated that she was qualified for the ESS position, she has not met this heightened standard, as discussed below.

As to her claim based on sex, plaintiff asserts that she was treated differently than Touville because she was selected for layoff in violation of defendants' policies which require that layoff decisions be based on seniority if the remaining person is qualified for the position. Plaintiff asserts that given that she had greater seniority than Touville and she was qualified for the position, she was treated differently than Touville. Aside from the fact that plaintiff has not demonstrated that she was qualified, in a RIF case plaintiff must show more than evidence demonstrating that she was treated differently than similarly-situated males. Her burden of proof is heightened. She has not provided the required additional direct, circumstantial, or statistical evidence.

Plaintiff also asserts that Terri Plush, who signed the letter informing plaintiff of her layoff, had told her in January 2009 to hire men for two vacant housekeeping positions, demonstrating a bias toward hiring men. However, as defendants point out, plaintiff acknowledged at deposition that Plush's comment was unrelated to the ESS position or the decision to terminate her. Additionally, the Sixth Circuit has found that allegedly biased remarks are too isolated and ambiguous when made six and one-half months prior to a discharge. *Rosso v. A.I. Root Co.,* 97 Fed.Appx. 517 (6th Cir. 2004). Here, Plush's remarks were made about seven months earlier.

As to her claim based on age, plaintiff asserts that Touville was substantially younger and had only been employed for a short time. Again, however, this does not constitute *additional* evidence. *See Geiger v. Tower Automotive,* 579 F.3d 614 (6th Cir. 2009)

11

(Defendant selected an employee 29 years younger than plaintiff for the position, but this did not satisfy the fourth element of the prima facie case because in a RIF the plaintiff must provide additional, direct, circumstantial, statistical evidence that he was singled out for discharge for impermissible reasons.)

Plaintiff additionally asserts that throughout 2009, Plush made comments to plaintiff to "take it easy" and "you're not getting any younger," and gave plaintiff additional responsibilities during this time despite her comments to take it easy. Plaintiff contends that this supports an inference that Plush was trying to motivate plaintiff to voluntarily leave her employment because of her age. The Court agrees with defendants that there is no evidence that these comments were related to the decisions to eliminate the Housekeeping/Laundry Supervisor position or terminate plaintiff. They were made in the context of plaintiff's health issues. And, plaintiff herself testified that she told Plush that her doctor had told her to take it easy. Furthermore, a court may consider whether alleged age-biased comments are "merely vague, ambiguous, or isolated remarks." *Blandford v. Exxon Mobil Corp.,* 2012 WL 1994734 (6th Cir. June 5, 2012) (citations omitted). The Court finds Plush's remarks that plaintiff was not getting any younger to be vague or ambiguous. In fact, Plush was only about two years younger than plaintiff which would tend to discredit plaintiff's belief that Plush discriminated against her based on age. *See Garrett v. Ameritech Services, Inc.,* 2011 WL 902095 (E.D.Mich. 2011) (citing *Howell v. Canton City Sch. Dist. Bd. of Educ.*, 1997 WL 413630 (6th Cir. Jul.17, 1997)) ("Cases have held that when the decision-maker is in the same protected class as the plaintiff, an inference of discrimination is weakened or the likelihood of discrimination is lessened.")

**(3) pretext**

Even assuming plaintiff has satisfied her heightened burden so as to establish a prima facie case, plaintiff has not presented evidence that defendants' articulated reasons for consolidating the positions and selecting Touville for the newly-created ESS position was pretextual.  In particular, plaintiff must "show that the explanation actually advanced has no basis in fact, did not actually motivate the employer, or was insufficient to justify termination."  *Trapp v. TSS Technologies, Inc.,* 2012 WL 2354355 (6th Cir. 2012 (citing *Wexler v. White's Fine Furniture, Inc*., 317 F.3d 564, 576 (6th Cir.2003)).  Plaintiff claims that Plush assured her shortly before her lay-off that she need not be concerned about her job.  But, plaintiff does not present evidence undermining the decision to consolidate the positions.  Nor, as discussed above, has plaintiff shown that she was qualified for the newly-created position while Touville was not.  Plaintiff's assertions that she was as qualified, or actually more qualified, than Touville are unsupported.  *See Id.* (noting that "ADEA plaintiffs cannot rebut an employer's proffered explanation by proposing their own rubric of relevant qualifications and testing the employer's conduct against it.") and citing *Schoonmaker v. Spartan Graphics Leasing*, 595 F.3d 261,  268–69 (6th Cir. 2010) ("[A plaintiff's] subjective views in relation to other coworkers, without more, are insufficient to establish discrimination.").

For these reasons, plaintiff's age and gender claims do not survive summary judgment.

**Conclusion**

For the foregoing reasons, defendants' Motion for Summary Judgment is granted.

IT IS SO ORDERED.

                                                  /s/ Patricia A. Gaughan
                                                  PATRICIA A. GAUGHAN
                                                  United States District Judge

Dated: 11/14/12